IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JENNIFER L.,[1] | Case No. 3:24-cv-00231-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Jennifer L. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in April 1978, making her thirty-eight years old on December 31, 2016, her alleged disability onset date. (Tr. 80.) Plaintiff is a high school graduate who has past relevant work experience as a composite job display manager, exhibit display representative, horticulture and nursery products salesperson, and administrative clerk. (*Id.* at 31.) In her application for benefits, Plaintiff alleges disability due to "sever[e] allergies, asthma, migraines, cervical disc injury, frozen shoulders (both shoulders), central serious retinopathy (both eyes), anxiety, [and] possible long-term COVID." (*Id.* at 80.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on April 22, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 84, 91, 106-07.) Plaintiff and a vocational expert ("VE") appeared by telephone and testified at an administrative hearing on May 4, 2023. (*Id.* at 39-78.) On June 15, 2023, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 18-33.)

On January 8, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

### II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *See id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 20-33.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 31, 2016, through her date last insured of March 31, 2019.[2] (*Id.* at 20.) At step two, the ALJ determined that Plaintiff

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status] . . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of March 31, 2019 (*see* Tr. 20, 81) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before March 31, 2019, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1

suffered from the following severe, medically determinable impairments: "cervical spine degenerative disc disease and cervical, thoracic, and lumbar spine sprain/dysfunction." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 24.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff can occasionally crawl and climb ladders, ropes, or scaffolds; (2) Plaintiff can frequently climb ramps and stairs, stoop, kneel, and crouch; (3) Plaintiff can occasionally reach overhead and frequently reach in all other directions; (4) Plaintiff can tolerate occasional exposure to extreme cold and vibrations; and (5) Plaintiff can tolerate occasional exposure to hazards, such as unprotected heights and moving mechanical machinery. (*Id.* at 25.) At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a composite job display manager, exhibit display representative, horticulture and nursery products salesperson, and administrative clerk. (*Id.* at 31.) Additionally, at step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a day worker, bagger, and dining room attendant. (*Id.* at 32.) The ALJ also found that if Plaintiff was further restricted to light work, she could perform work as a small products assembler I, cafeteria attendant, and housekeeping cleaner. (*Id.*)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) finding that Plaintiff's migraines imposed no more than minimal limitations, resulting in errors at steps two, four, and five; and (2)

---

n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

rejecting Plaintiff's subjective symptom testimony regarding her neck and back pain. (*See generally* Pl.'s Opening Br. ("Pl.'s Br."), ECF No. 10.) As explained below, the Court finds that the ALJ's decision is free of harmful legal error and supported by substantial evidence in the record, and therefore affirms the Commissioner's decision.

I.     NON-SEVERE IMPAIRMENT

Plaintiff argues that the ALJ erred by failing to find that her migraines are a severe impairment at step two and by failing to incorporate limitations resulting from her migraines at steps four and five. (Pl.'s Br. at 9-13; Pl.'s Reply at 2-4, ECF No. 13.)

A.     Applicable Law

At step two, "an impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant]'s ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Ninth Circuit has recognized that step two is "a de minimis screening device [used] to dispose of groundless claims[.]" *Id.* at 687 (simplified).

A claimant bears the burden of demonstrating that an ALJ's step-two error was harmful. *See Howland v. Saul*, 804 F. App'x 467, 469 (9th Cir. 2020) (explaining that the claimant bore "the burden of demonstrating harmful error," and that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination") (citation omitted). If the ALJ resolved step two in the claimant's favor, a claimant must demonstrate two things to establish harmful error.

First, a claimant must show that the ALJ failed to consider all medically determinable impairments (severe and non-severe) in the RFC determination and VE hypothetical derived therefrom. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13,

2022) ("[E]ven if the [step two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination."); *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) ("Any error was harmless because the ALJ still resolved step two in [the claimant]'s favor and considered all medically determinable impairments (severe and non-severe) at the later steps.").

A claimant can do so by demonstrating that the ALJ erred in discounting, among other things, the claimant's symptom testimony or medical opinion evidence. *See Berg v. Saul*, 831 F. App'x 849, 850-51 (9th Cir. 2020) (explaining that the ALJ erred in evaluating the medical opinion evidence and that the "errors were not harmless" because although "the ALJ permitted [the claimant]'s claim to proceed past step two . . . , the errors resulted in a[n RFC] that excluded the significant [and improperly discounted] limitations"); *Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020) ("[T]he [step two] error was not harmless here, because in determining [the] RFC, which identified no limitations stemming from [the claimant]'s mental impairment, the ALJ improperly discounted the opinions of three medical providers . . . who concluded that [the claimant]'s severe depression and anxiety impacted his ability to work.").

Second, a claimant asserting that an ALJ's step-two findings resulted in harmful error must identify and detail what limitations the ALJ should have included in the RFC determination. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *3 (9th Cir. Feb. 1, 2022) (rejecting the claimant's argument that the ALJ "failed to consider the impact of [certain] functional impairments" because the claimant's "brief . . . fail[ed] to 'detail what other physical limitations' should have been included in the RFC based on these considerations, which overlap with points the ALJ expressly considered" (quoting *Valentine v. Comm'r Soc. Sec.*

PAGE 7 – OPINION AND ORDER

*Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009))); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) ("[The claimant] fails to identify . . . limitations that the ALJ should have incorporated into the RFC. As a result, [the claimant] has not argued the issue specifically and distinctly as required to invoke the Court's review.") (simplified); *see also Cramer v. Berryhill*, 706 F. App'x 385, 385-86 (9th Cir. 2017) ("Any error in failing to specifically discuss [certain impairments] at step two is harmless because the ALJ considered all the evidence in assessing [the RFC], and [the claimant] fails to identify any medical evidence supporting additional functional limitations that the ALJ did not consider." (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007))).

    **B.**    **Analysis**

Plaintiff argues that the ALJ erred by failing to include her migraines as a severe impairment at step two. (Pl.'s Br. at 11, "The migraine headaches were clearly more than inconsistent and non-severe.") Plaintiff acknowledges that the ALJ found that she suffers from severe physical impairments and thus resolved step two in her favor. (*Id.* at 8.) Plaintiff nevertheless argues that the ALJ's step-two error was harmful because it resulted in an RFC and VE hypothetical that excluded her migraine-related limitations. (*Id.* at 9-16; *see also* Pl.'s Reply at 2-4.)

    **1.**    **Step Two**

At step two, the ALJ concluded that Plaintiff's migraines were not a severe impairment because they caused only mild symptoms and limitations, were well controlled with treatment, and had existed for less than twelve months. (Tr. 21, "The record shows medication adequately controls migraines. . . . Accordingly, these conditions do not constitute severe medically determinable impairments.") Plaintiff does not identify any specific evidence in the record—her own symptom testimony, a medical opinion, medical records, or otherwise—to support a finding

that her migraines were a severe impairment during the alleged disability period. (*See generally* Pl.'s Br. at 9-16; Pl.'s Reply at 2-4.)

The Court finds that substantial evidence supports the ALJ's conclusion at step two that Plaintiff's migraines were not a severe impairment. Plaintiff's alleged onset date was December 31, 2016, and her DLI was March 31, 2019. (Tr. 80, 82.) In May 2023, Plaintiff acknowledged that she experienced migraines only "occasionally prior to 2020" and that her migraines worsened in 2021. (*Id.* at 1418.) At her hearing, Plaintiff did not mention her migraines except stating that they increased in 2020 (i.e., post-DLI) which she thought might be the result of "long COVID." (*Id.* at 71.) As the Commissioner accurately points out, the record demonstrates that Plaintiff discussed her migraines with providers only a few times throughout her treatment history, and only one of those visits took place during the alleged period of disability. (*See* Def.'s Br. at 5, "Given this record—Plaintiff discussed active migraine care only five times in her 1,140-page medical record, and only one of those times was within the period at issue—the ALJ reasonably concluded at step two that 'the record shows medication adequately controls [Plaintiff's] migraines[,]" ECF No. 12.)

At step two, the ALJ summarized the medical record with respect to Plaintiff's migraines, and noted that Plaintiff presented with a migraine on December 22, 2016, reporting that it had lasted for six days, with only mild symptoms the last two days, and that she had experienced intermittent migraines for the past four months. (Tr. 21, citing *id.* at 350.) The ALJ acknowledged that Plaintiff was "initially diagnosed with migraines at age 30 or 31" but that "she had a single migraine and then no migraines for several years" (*Id.*) The ALJ explained that Plaintiff reported at that time that she had an average of one or two headaches per year over the past three years, but that she had experienced an average of one headache per month, lasting

PAGE 9 – OPINION AND ORDER

three to four days, over the past four to five months. (*Id.*) The ALJ reasoned that Plaintiff was able to treat her migraine symptoms with an over-the-counter medication, Excedrin Migraine, which allowed her to go to work most days with the exception of one missed workday. (*Id.*, "She was treating her symptoms with Excedrin Migraine, which was allowing her to go to work most days, although she did have to miss one day of work. . . . She had never taken prescription medications for migraines before.").

The ALJ also discussed Plaintiff's November 28, 2017, appointment, at which the provider noted that Plaintiff was having one migraine every other month, her symptoms were stable and adequately controlled, and that Sumatriptan and Ondansetron were helpful in treating her migraines. (*Id.*, "[The provider] noted the claimant was having one migraine every other month. Sumatriptan was helping. Symptoms were stable and adequately controlled. Her current medications were continued[,]" citing *id.* at 350-52.) As noted, this is the first and last appointment during the alleged period of disability at which Plaintiff sought treatment for her migraines, and the record is clear that Plaintiff's migraines were stable and adequately controlled with medication at that time. (*Id.* at 350-52.)

The record reflects that Plaintiff did not seek migraine treatment again until December 2021, over four years later, and twenty-one months after her DLI. (*Id.* at 833-38.) At that appointment, the provider noted that Plaintiff's migraines "seem[] to be improving w[ith] naturopathic [treatment]." (*Id.* at 834.) The medical record reasonably supports the ALJ's conclusion that Plaintiff's migraines did not last "for a continuous period of at least [twelve] months" to meet the durational requirement of a disabling impairment. 20 C.F.R. § 416.905.

For these reasons, the ALJ did not err at step two by finding that Plaintiff's migraines were a non-severe impairment during the alleged disability period.

### 2. Steps Four and Five

The Court also finds that the ALJ did not err at steps four or five by concluding that Plaintiff's migraines caused only mild and transient limitations which did not require accommodation in her RFC.

At step four, the ALJ stated that "the medical record does not support a finding that migraines are a severe medically determinable impairment" and Plaintiff's allegations of disabling migraines are "inconsistent." (Tr. 29; *see also id.* at 21, "I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.") To support his conclusion that Plaintiff's migraines did not require accommodation in her RFC, the ALJ referred back to his analysis at step two. (*Id.* at 29.) At step two, as discussed in detail above, the ALJ highlighted Plaintiff's only appointment at which she sought care of her migraines during the alleged period of disability, which reflected that Plaintiff's migraines were stable and adequately controlled with medication at that time. (*Id.* at 21; *see also id.* at 350-52.)

Plaintiff argues that the ALJ's "SSR 96-8p narrative discussion" assessing Plaintiff with no limitations relating to her migraines was improper. (Pl.'s Br. at 12, citing SSR 96-8p, *available at* 1996 WL 374184 (July 2, 1996).) Specifically, Plaintiff asserts that the ALJ's narrative discussion did not contain "specific medical factors" or "laboratory findings" and instead only "broadly" discussed Plaintiff's longitudinal treatment history and found that Plaintiff's migraines were "inconsistent." (*Id.*); *see also* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). However, Plaintiff points to no medical records or findings that the ALJ failed to address, and the record supports the ALJ's analysis concluding

PAGE 11 – OPINION AND ORDER

that Plaintiff sought migraine treatment at only one appointment during the alleged period of disability and that her migraines were stable and adequately controlled with medication at that time. See *Wyss v. Colvin*, No. 3:16-cv-00023-BR, 2016 WL 7340289, at *4 (D. Or. Dec. 19, 2016) ("Plaintiff's fatigue was only sporadically mentioned throughout the medical record and was not addressed in any way from which the ALJ could reasonably assess functional limitations.").

Plaintiff also argues that "the ALJ failed to note that Plaintiff had one episode that lasted a few days" and that Plaintiff had "lingering symptoms days afterwards." (Pl.'s Br. at 10, citing Tr. 345.) However, the ALJ expressly acknowledged Plaintiff's report about the duration of her migraines and recovery time, but reasonably concluded that Plaintiff was able to treat her migraine symptoms with an over-the-counter medication, Excedrin Migraine, which allowed her to go to work most days with the exception of one missed workday prior to her alleged onset date. (Tr. 21, "She was treating her symptoms with Excedrin Migraine, which was allowing her to go to work most days, although she did have to miss one day of work. . . . She had never taken prescription medications for migraines before.")

As noted, a claimant asserting that an ALJ's step-two findings resulted in harmful error must also identify and detail what limitations the ALJ should have included in the RFC determination. The only provider who provided an opinion about Plaintiff's migraines was Jamie Randles, M.D. ("Dr. Randles"), who did not include any specific work-related limitations resulting from Plaintiff's migraines.[3] (Tr. 14.) Plaintiff now suggests that the ALJ should have

---

[3] The ALJ found that Dr. Randles' opinion was not persuasive because it was inconsistent with the medical record, opined on a matter reserved for the Commissioner, and included no specific functional limitations. (Tr. 30, "The opinions of Dr. Randles indicating the claimant is unable to work are reserved to the Commissioner. They are not persuasive because they are not consistent with the record, which does not support inability to work. To the extent they indicate

included limitations related to her migraines such as the need to take breaks, flexibility to be off task, and frequent absences (Pl.'s Br. at 11-12), but she does not point to any medical records or opinions that support any of those functional limitations. *See Valente M. v. Kijakazi*, No. 2:21-cv-00015-MKD, 2022 WL 909356, at *7 (E.D. Wash. Mar. 28, 2022) ("There are no medical opinions in the record that include limitations related to Plaintiff's [] impairments. Plaintiff has not met h[er] burden in demonstrating the ALJ harmfully erred at step two.") (citation omitted). Instead, as summarized above, the medical record demonstrates that Plaintiff's migraines were stable and adequately controlled with medication during the alleged period of disability and that she missed only one workday prior to her alleged onset date as a result of her migraines.

In summary, the record includes only isolated references to Plaintiff's migraines during the alleged period of disability and does not support Plaintiff's allegations of disabling migraine symptoms at that time. The ALJ appropriately weighed this evidence, translated into the RFC all of Plaintiff's limitations that were supported by substantial evidence, and posed hypothetical questions to the VE consistent with Plaintiff's RFC. For these reasons, the Court concludes that the ALJ did not err in formulating an RFC that accounted for all of Plaintiff's credible limitations nor in posing hypothetical questions to the VE. *See Sam B. v. Comm'r of Soc. Sec.*, No. 2:19-cv-00354-DWC, 2019 WL 5541347, at *4 (W.D. Wash. Oct. 28, 2019) ("[T]he RFC assessment and the hypothetical questions posed to the VE were properly based on the credible functional limitations contained in the record, and thus both the RFC assessment and the hypothetical question posed to the VE were proper."); *Leroy M. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-

---

more restrictive limitations than set forth in the residual functional capacity, they are inconsistent with the claimant's treatment history, objective findings, and performance on examinations through the date last insured, as described in detail above. Dr. Randles provides no specific functional limitations. Instead, he lists conditions and symptoms.") (citation omitted). Plaintiff has not challenged the ALJ's evaluation of Dr. Randles' opinion.

PAGE 13 – OPINION AND ORDER

00632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) ("Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." (first quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016); and then citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001))); *Diane M. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01971-BR, 2018 WL 6440889, at *8 (D. Or. Dec. 6, 2018) ("[T]he Court concludes the ALJ did not err when he assessed Plaintiff's RFC and he accounted for all credible limitations in his assessment.").

## II.     SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that the ALJ erred in discounting her symptom testimony regarding her physically degenerative impairments, including her neck and back pain.[4] (Pl.'s Br. at 15-19.)

### A.     Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

---

[4] Plaintiff also argues in passing that the ALJ erred in evaluating her testimony about her migraines (Pl.'s Br. at 16, 18-19), but Plaintiff testified at the hearing that she had no physical impairments other than her cervical issues that prevented her from working prior to March 2019 (i.e., her DLI). (Tr. 67.) The ALJ asked Plaintiff about her physical impairments several times at the hearing, and she mentioned her migraines only once, noting that they increased in 2020 which she thought might be the result of "long COVID." (*Id.* at 71.) In addition, Plaintiff submitted information prior to her hearing representing that she experienced migraines only "occasionally prior to 2020" and that her migraines worsened in 2021. (*Id.* at 1418.)

claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 6:11-cv-00583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (first citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); then citing *Lingenfelter*, 504 F.3d at 1040; and then citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B.   Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 27, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]") The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

**1.   Conservative and Effective Course of Treatment**

The ALJ found Plaintiff's allegations regarding her symptom severity and degree of functional limitation inconsistent with the medical evidence as a whole, including Plaintiff's conservative treatment and evidence of improvement with treatment. (Tr. 27-29.) Both are valid reasons to reject a claimant's subjective symptom testimony. *See Walker v. Kijakazi*, No. 22-

35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where substantial evidence demonstrated that the claimant's symptoms improved with treatment and medication); *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (quoting *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007))); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted); *Romo v. Berryhill*, 731 F. App'x 574, 577-78 (9th Cir. 2018) (holding that "[i]mpairments that can be controlled effectively with [treatment] are not disabling" (quoting *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006))); *Tommasetti*, 533 F.3d at 1039 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (quoting *Parra*, 481 F.3d at 750-51)).

With respect to Plaintiff's neck pain, the ALJ discussed Plaintiff's physical examination in February 2016, prior to her December 2016 alleged onset date, at which her provider noted moderate tenderness to palpation in Plaintiff's neck and restricted range of motion, likely due to a car accident in January 2016. (Tr. 27, citing *id.* at 359.) The examination notes indicate that all of Plaintiff's symptoms were "gradually improving" and that she had "significant improvement" after seeking chiropractic care. (*Id.*) Plaintiff was also using conservative treatment methods including ibuprofen and stretching to alleviate her pain at that time. (*Id.*) The ALJ discussed progress notes from November 28, 2017, reflecting that Plaintiff was experiencing some neck pain, but that her pain was "better with [a] new pillow." (*Id.* at 27, citing *id.* at 345.) The ALJ also discussed a chiropractic treatment note from March 2019 and noted that Plaintiff reported

discomfort with movement and prolonged sitting, but that her neck pain decreased with rest, chiropractic care, medication, ice, and heat. (*Id.* at 28, citing *id.* at 301.) The ALJ further discussed progress notes from November 2019 reflecting that Plaintiff's neck pain improved with injections, home exercises, and Robaxin. (*Id.*, citing *id.* at 314.) Thus, the ALJ's conclusion that Plaintiff's neck pain responded to conservative treatment was supported by substantial evidence in the record.

With respect to Plaintiff's physical degenerative issues and pinched nerve, the ALJ cited Plaintiff's testimony that her physical degenerative issues and pinched nerve that began in January 2019 were the main issues that prevented her from working. (*Id.* at 26, "Prior to the date last insured, her main issue was physical degenerative issues and pinched nerve that occurred in January 2019 and prevented her from working for about a year. . . . Before January 2019, she was a happy workaholic."; *see also id.* at 66, "It was really [in] 2019 that [I] became—before that, I was a happy workaholic. And 2019 is really when it went - everything changed."). The ALJ noted that the treatment Plaintiff received prior to January 2019 was "more general/primary in nature," and given that her DLI was March 31, 2019, "the record does not reveal any continuous or expected 12-month period of disabling functional limitations through the date last insured." (*Id.* at 28.) While Plaintiff is correct that the record reflects that she reported neck and back pain and migraines for more than one year (Pl.'s Br. at 16), the ALJ correctly concluded that the record does not support a finding that those impairments caused disabling functional limitations for a twelve-month period during the relevant time period. (Tr. 28, "The record does not reveal any continuous or expected [twelve]-month period of disabling functional limitations through the date last insured[.]"; *see also* Def.'s Br. at 15, "Plaintiff conflates having an ongoing

PAGE 17 – OPINION AND ORDER

medical issue with this issue being debilitating enough during the whole adjudicatory period to meet the level of a severe impairment.")

For these reasons, the Court finds that the ALJ appropriately discounted Plaintiff's symptom testimony based on her conservative and effective treatment. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of a claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it]").

### 2. Objective Medical Evidence

The ALJ also discounted Plaintiff's allegations of disabling physical health symptoms because they were inconsistent with the objective medical evidence. (Tr. 27-30.) This was a clear and convincing reason for discounting Plaintiff's testimony. *See Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (holding that the ALJ met the clear and convincing reasons standard in part because the ALJ discounted the claimant's testimony on the ground that it was "inconsistent with the medical evidence").

The ALJ acknowledged Plaintiff's physical examination in February 2016, prior to her December 2016 alleged onset date. (Tr. 27, citing *id.* at 359.) The ALJ noted that the provider found moderate tenderness to palpation in Plaintiff's neck, and a restricted range of motion, likely due to a car accident in January 2016. (*Id.*) The ALJ discussed that the provider found Plaintiff's symptoms were improving gradually, and could be addressed with conservative treatment including medication, chiropractic care, gentle stretching, and heat. (*Id.*) The ALJ also cited x-rays from July 2019, three months after the end of the alleged period of disability. (*Id.* at 28, citing *id.* at 399.) The ALJ noted that these x-rays reflected only mild degenerative disc changes at C6-7. (*Id.*) In November 2019, a medical provider noted that "there were no worrisome findings on exam[,]" and that Plaintiff should continue with "home treatment"

including stretching. (*Id.* at 315.) The same medical provider asked Plaintiff if she would like to be referred to a spine center, and Plaintiff responded that she "would like to wait another couple months first." (*Id.*) In sum, the medical record supports the ALJ's conclusion that Plaintiff's allegations of disabling pain were inconsistent with the objective medical findings.

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 18th day of February, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge